**LAGAFUA LAISENE for Sialega Title and Family of Nu'uuli
and UAEA SIALEGA for Sialega Family of Nu'uuli, Plaintiffs**

**v.**

**MAUGA S. P. of Pago Pago, Defendant**

No. 17-1955

High Court of American Samoa

Civil Jurisdiction, Trial Division

[Land: "Avau" near Nu'uuli]

November 4, 1955

---

OPINION AND DECREE

Heard at Fagatogo on Oct. 18th and 19th, 1955 before
MORROW, *Chief Judge* and OFOIA, *Temporary Asso-
ciate Judge.*

Lagafua Laisene *pro se* and Sialega Family.

S. Lutu, counsel for Uaea Sialega and Sialega Family.

Leota, counsel for Mauga S. P.

OPINION OF THE COURT

MORROW, *Chief Judge.*

On March 3, 1955 Mauga S. P. of Pago Pago filed his
application with the Registrar of Titles to have certain
land (designated as Avau on the survey accompanying the
the application) on the mountain side of the main highway
between the villages of Faganeanea and Nu'uuli registered
as his individually owned property. On March 17, 1955 La-
gafua Laisene, purporting to act in behalf of the Sialega
Family of Nu'uuli, filed an objection to the proposed regis-
tration claiming that the land was the communal family
land of the Sialega Family of Nu'uuli. On March 21, 1955
Uaea Sialega filed a similar objection and made the same

172

claim. Hence this litigation. See Sec. 905 of the A. S. Code.

Prior to the hearing the Court viewed the surveyed tract in the presence of the parties.

At the hearing, in order to establish his title, Mauga S. P. testified that the land belonged to his grandmother Taelimu, a member of the Sialega Family, prior to the establishment of the Government in 1900; that Taelimu had two children, viz. a son, Moimoi, and a daughter, Faafeumalo; that Taelimu died; that Moimoi died without children and that Faafeumalo died leaving the witness Mauga S. P. and Fuifuitaua as her surviving children; that Fuifuitaua died leaving Faafeumalo II and Uato'a as his surviving children. Mauga S. P. also testified that he would be 60 years old on Nov. 30, 1955 but he did not know the year of his birth. He further testified that the land Avau was cleared from the bush about "5 or 6 years or 10 years" before the Government was established; that he saw it cleared and that he helped cut down the big trees growing on it.

If it be true that Avau was cleared "5 or 6 years or 10 years" before April 17, 1900 when the Government was established then, since Mauga S. P. must (he will be 60 years old on Nov. 30, 1955 as he testified) have been born on Nov. 30, 1895, it would follow that Mauga S. P. saw the land cleared from the bush and helped cut down the big trees on it somewhere between 7 months and $5\frac{1}{2}$ years before he was born, a truly remarkable feat.

He also testified that Avau land had been occupied by the Sialega people ever since it was cleared; that all the occupants had been Sialega people except a Tokelau islander (he is married to a Sialega woman) who is presently occupying one end under permission of Lina, a Sialega woman who is the other occupant.

Mauga S. P. further told the Court while on the witness stand that his grandmother Taelimu was the "sole pule of

173

the family" (meaning the Sialega Family). We are quite certain that under Samoan customs this could not have been true since she was not the matai of the family.

Lagafua testified that he and Lina (as before stated, she is a Sialega woman) went on the land to live in 1926; that they put up a house on it and Lagafua (he was enlisted in the U.S. Navy) paid men to come and cut down the big trees on the land so as to clear it from the bush; that they went on the land through the permission of Sialega Minute who was Lina's matai; that they lived together on the land until 1938 when they were divorced. After the divorce Lagafua went to live in Nu'uuli but Lina has continued to live on the land—sometimes with one or two other Sialega family members—ever since.

When Lagafua cleared the land, according to his testimony, he followed Samoan custom and claimed the land as Sialega property since he was living in that family and a member of it through his marriage to Lina. He did not claim the land as his individually owned property.

Samoans acquired title to their lands by first occupancy coupled with a claim of ownership. In the case of *Soliai v. Lagafua*, No. 5-1949 (H.C. of Am. Samoa) we said: "Occupation coupled with a claim of ownership will establish ownership to what was bush land before occupation. See 2 Blackstone 8." The view that the occupant who first takes possession of land with the intention of having it as his own thereby becomes the owner of it is approved in Maine's Ancient Law (3rd Am.Ed.) at p. 238. The doctrine of acquisition of original title by the first occupant with a claim of ownership has been approved by this Court in the case of *Faataliga v. Fano*, No. 80-1948 (H.C. of Am. Samoa) and a number of other cases. In the case of *Leasiolagi v. Fao*, No. 12-1949 (H.C. of Am. Samoa) we said ". . . it was the custom for the matai and members of his family clearing bush land and occupying it to claim it

174

as communal family land and not as the individually owned land of either the matai or the family members occupying it."

We think the weight of the evidence is clearly to the effect that this land was cleared from the bush by members of the Sialega Family acting under the authority of its matai; that it has never been occupied by anyone other than Sialega Family members (excepting that a part of it, as heretofore stated, is now occupied, through permission of Lina, by a Tokelau islander who is married to a Sialega woman) under a claim of communal ownership by the Sialega Family in accordance with well known and ancient Samoan custom as to land ownership.

True, Mauga S. P. introduced in evidence a document purporting to be signed by Lina admitting that her occupancy of Avau was first through permission of Moimoi and after his death through permission from Mauga S. P. She denied her purported signature to the document under oath.

Even if her signature be genuine, since the document was obviously not written by her but was prepared by Mauga for her signature and in view of the other circumstances surrounding its alleged signing by Lina, we think that it does not state true facts as to how she came to occupy the land. Her blood father was a Sialega and we are convinced by the evidence as a whole that her occupancy was and has always been through the permission of the Sialega, and not through the permission of either Moimoi or Mauga S. P.

Mauga surveyed and offered for registration only a small part—a rectangular piece 60 feet by 80 feet—of Avau, yet he claims to own all of it. Why would a man survey only a small part of an entire tract owned by him and offer that part for registration, neglecting the remainder? This peculiar circumstance, when we consider all of the testimony, further convinces us that Mauga S. P. is

not the owner of the land he offered for registration. On the other hand we are convinced from the evidence as a whole that it is the communal family land of the Sialega Family of Nu'uuli. The evidence clearly preponderates in favor of this view and we so find.

### DECREE

Accordingly, it is ORDERED, ADJUDGED and DECREED that the land Avau, as shown on the survey* accompanying Mauga S. P.'s application to register it as his individually owned property, shall be registered as the communal family land of the Sialega Family of Nu'uuli.

The Registrar of Titles will be advised of this decree.

Since Mauga S. P. paid for the survey and his expenditure therefor will inure to the benefit of the Sialega Family, we think it just that the costs be taxed to the objectors rather than to him.

Accordingly, costs in the total sum of $30.00 are hereby assessed against Lagafua Laisene and Uaea, $15.00 to be paid by each of them within 30 days.

---

* NOTE: Survey was made on May 1, 1954. Magnetic North is shown on survey.